UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JAMES CERISIER,

          Plaintiff,

  -against-

NEW YORK CITY POLICE DEPARTMENT
OFFICER JOHN DOE,

          Defendant.

**COMPLAINT
AND JURY DEMAND**

Plaintiff James Cerisier, by and through his attorneys, Emery Celli Brinckerhoff & Abady LLP, for his Complaint alleges as follows:

## PRELIMINARY STATEMENT

1. The morning of January 28, 2019 started like many others for James Cerisier: he woke up early, got ready for work, and began to drive into lower Manhattan from his home in Flatbush, Brooklyn. He had no idea that, just some minutes later, he would be staring down the barrel of a reckless police officer's gun—simply for being an African-American man driving a luxury vehicle.

2. As Mr. Cerisier drove up the congested Brooklyn-Queens Expressway, Officer John Doe waved him down, signaling for Mr. Cerisier to pull over.

3. Mr. Cerisier saw Officer John Doe's hand signal and began to pull over to the extent possible, given traffic conditions. Seconds later, Officer John Doe drew his weapon and pointed it directly at Mr. Cerisier—without any reason, and in the middle of a crowded street. Officer John Doe, mere feet from Mr. Cerisier's car, barked "Move it!" and trained his gun on Mr. Cerisier.

4. Mr. Cerisier, fearing for his life, opened his hands on the steering wheel to show Officer John Doe he was unarmed. Officer John Doe, standing in the middle of the expressway, blocked traffic and created greater congestion around them—further preventing Mr. Cerisier from pulling over.

5. For several excruciating minutes, Mr. Cerisier sat in the car, inching to the shoulder as traffic would allow, face-to-face with Officer John Doe's gun. Officer John Doe only lowered his gun when he noticed Mr. Cerisier's Department of Education parking permit on his dashboard.

6. Mr. Cerisier, still stunned, built up the courage to ask Officer John Doe why he pulled his gun out. Officer John Doe's response? "You see what goes on on TV." Officer John Doe then simply drove off, without an apology and without issuing Mr. Cerisier a ticket, a summons, or even a verbal warning.

7. Mr. Cerisier's situation did, unfortunately, mirror "what goes on on TV:" needless escalation of minor traffic stops into life-threatening situations for many African-Americans, often with tragic consequences. But for an arbitrary marker of his "respectability," James Cerisier may well have joined the ranks of Eric Garner or Sandra Bland as a black life cut short.

8. Since then, Mr. Cerisier has attempted to work with the Civilian Complaint Review Board ("CCRB") to hold Officer John Doe—whom the CCRB has apparently identified—accountable for his egregious misconduct.

9. Now that resolution through the CCRB has proven difficult, Mr. Cerisier brings this action to vindicate his constitutional rights.

## THE PARTIES

10. Plaintiff James Cerisier is a citizen of the United States and at all relevant times was a resident of Brooklyn, New York.

11. Defendant New York Police Department Officer John Doe was, at all times relevant to this Complaint, a police officer employed by the City of New York. In this role, Defendant Officer John Doe was a duly appointed and acting officer, servant, employee and/or agent of the City of New York. At all relevant times, he was acting in the scope of his employment and under color of state law.

## JURISDICTION AND VENUE

12. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

13. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

14. The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

15. Plaintiff demands trial by jury.

## FACTUAL ALLEGATIONS

### *Officer John Doe Threatens to Kill Mr. Cerisier*

16. On the morning of January 28, 2019, Plaintiff James Cerisier was driving along the Brooklyn-Queens Expressway ("BQE") from his home in the Flatbush neighborhood of Brooklyn into Manhattan for a citywide meeting being held by his employer, the New York City Department of Education ("DOE").

3

17.     Mr. Cerisier, a tall African-American man, is a senior employee of DOE, in charge of supervising operations at several New York City public schools. He drives a white Mercedes-Benz sedan.

18.     Given the rush-hour traffic that was congesting the BQE at the time, Mr. Cerisier was moving slowly, driving well below the posted speed limit.

19.     As he drove north in the middle lane of the BQE through the Red Hook neighborhood of Brooklyn, Mr. Cerisier approached a fork; by steering onto a ramp to the right, he could enter Manhattan by taking the Brooklyn Bridge, while steering left would take him off the BQE and through the Hugh L. Carey Tunnel.

20.     Mr. Cerisier decided to travel over the Brooklyn Bridge and turned on his turn signal. He began to merge into the right lane to continue onto the ramp towards the Brooklyn Bridge.

21.     Defendant Officer John Doe had parked his vehicle on the right shoulder of the BQE at this juncture, but was standing on the bank on the left side of the ramp towards the Brooklyn Bridge.

22.     As Mr. Cerisier began to change lanes, Officer John Doe signaled with his hands for Mr. Cerisier to pull over to the right shoulder.

23.     Just seconds later, Officer John Doe inexplicably escalated what should have been nothing more than a routine traffic stop. He entered the street, walked up to the front of Mr. Cerisier's car, and drew his firearm, pointing it directly at Mr. Cerisier through his windshield.

24.     Upon information and belief, Officer John Doe's weapon was fully loaded and operational.

25.    Mr. Cerisier, separated from the barrel of Officer John Doe's gun by little more than an inch of glass, feared for his life.

26.    In an attempt to defuse the situation, Mr. Cerisier opened up his palms, but kept the base of his hands on the steering wheel, showing Officer John Doe that his hands were empty.

27.    Officer John Doe, increasingly erratic and nervous, and now himself blocking traffic, screamed at Mr. Cerisier to "move it." He kept his gun trained on Mr. Cerisier's face as he guided Mr. Cerisier's car over to the shoulder.

28.    Mr. Cerisier was, after several minutes, able to pull over just in front of Officer John Doe's car. He kept his hands open and on the top of his steering wheel for this entire time. He then took one hand off the steering wheel to roll down his driver's side window.

29.    Officer John Doe left the middle of the highway and walked over to the shoulder, approaching Mr. Cerisier's window. He kept his gun pointed at Mr. Cerisier.

30.    As Officer John Doe approached Mr. Cerisier's window, he observed for the first time an official DOE parking permit on Mr. Cerisier's dashboard.

31.    Recognizing that he had misjudged Mr. Cerisier, Officer John Doe finally put his gun away. He grew noticeably more relaxed, asked whether Mr. Cerisier worked for the City, then asked for some form of identification.

32.    Mr. Cerisier confirmed that he was a DOE employee, and handed Officer John Doe his DOE identification card. He asked Officer John Doe why he had drawn his weapon, given the minor nature of the traffic stop.

33.    Officer John Doe responded: "You see what goes on on TV."

34.    Mr. Cerisier was too stunned to respond.

5

35.    Officer John Doe then handed Mr. Cerisier back his identification, walked back to his patrol car, and drove away. He never apologized to Mr. Cerisier, nor did he issue Mr. Cerisier a ticket, a summons, or any other notice indicating that he had done *anything wrong*.

***Mr. Cerisier, Despite Being Traumatized, Attempts to Obtain Justice***

36.    With the ordeal finally over, Mr. Cerisier drove to his meeting, emotionally rattled, but alive. He told several of his colleagues about the experience. His colleagues observed that he appeared shaken, and advised him to take the day off from work.

37.    Later that week, unable to shake the terror of the experience, Mr. Cerisier approached the 76th Precinct, where the stop had occurred, to report the incident.

38.    At the 76th Precinct, Mr. Cerisier told desk officers that he wished to file a report. After a five-minute interview, a detective at the precinct found that they could not help Mr. Cerisier without the name, shield number, precinct information, or other details about Officer John Doe.

39.    The following week, on February 4, 2019, Mr. Cerisier met with the CCRB. He gave a statement to CCRB investigators, who advised him that they would keep him apprised of the status of the case.

40.    Weeks later, CCRB investigators contacted Mr. Cerisier to schedule a second meeting. At that meeting, CCRB investigators showed Mr. Cerisier a photo array containing Officer John Doe's photograph. Mr. Cerisier identified Officer John Doe, but was not told his name.

41.    The CCRB has refused to provide Mr. Cerisier with any information about Officer Doe, instead offering only to mediate what Mr. Cerisier believed was ample cause for discipline.

42.     Through counsel, Mr. Cerisier has contacted the CCRB and confirmed that the CCRB has identified and interviewed Defendant Officer Doe. The CCRB has refused to provide counsel with Defendant Officer Doe's true name.

43.     On June 26, 2019, Mr. Cerisier filed a petition in the Supreme Court of Kings County, seeking leave to serve a notice of claim on the City of New York. That petition remains pending.

44.     Mr. Cerisier continues to suffer extreme anxiety as a result of this encounter; he fears that, simply by being an African-American man driving a luxury car, he may be shot by an overeager police officer.

45.     He has nightmares about the experience, periodically waking up in cold sweats after reliving this day.

46.     After receiving no help from the 76th Precinct or from the CCRB, Mr. Cerisier now brings this action to hold the New York City Police Department accountable for the misconduct of one of its officers.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Substantive Due Process/Excessive Force
(Against Defendant Officer John Doe)

47.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

48.     At all relevant times, Defendant Officer John Doe was acting under color of state law in his individual and official capacities within the scope of his employment as a police officer for the New York City Police Department.

49.     At all relevant times, there was no security or safety risk that would have justified the use of a weapon in effecting a traffic stop of Plaintiff.

7

50.     Plaintiff did not pose an immediate threat to the safety of Defendant Officer John Doe or others. Plaintiff was unarmed.

51.     By nonetheless drawing his gun and pointing it at Plaintiff for a sustained period of several minutes while screaming at him on the Brooklyn-Queens Expressway, Defendant Officer John Doe engaged in outrageous and conscience-shocking conduct.

52.     By drawing his gun and pointing it at Plaintiff for a sustained period of time, Defendant Officer John Doe used excessive, brutal, sadistic and unconscionable force on Plaintiff.

53.     Defendant acted beyond the scope of his authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments. Defendant Officer John Doe brandishing his weapon was a wanton and gratuitous threat of deadly force that was vastly out of proportion to any danger Plaintiff could have posed.

54.     Defendant Officer John Doe is not immune from suit because it was apparent to him that his action in drawing his gun and pointing it at Plaintiff was inconsistent with acceptable police practice and in violation of established precedent.

55.     As a direct and proximate result of Defendant Officer John Doe's misconduct detailed above, Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

    a.  Compensatory damages against Defendant Officer John Doe in an amount to be determined at trial;

b. Punitive damages against Defendant Officer John Doe in an amount to be

determined at trial;

c. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 2, 2019

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____/s/_____

Richard D. Emery
Ashok Chandran

600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff James Cerisier*

9